## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**JARVIS L. CANSLOR,**

      **PETITIONER,**

v.                                                    **CIVIL ACTION NO. 2:13-cv-116**

**HAROLD W. CLARKE,**
**Director, Virginia Department of Corrections,**

      **RESPONDENT.**

### REPORT AND RECOMMENDATION

Jarvis L. Canslor, a Virginia state prisoner, petitions the Court pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus, ECF Nos. 1, 18. The Respondent filed a motion to dismiss the amended petition. ECF No. 22. This matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the motion to dismiss on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). The undersigned finds that Canslor's claims are without merit, and therefore, **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 22, be **GRANTED**, and that the amended petition for a writ of habeas corpus, ECF No. 18, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKROUND

On August 25, 2008, Canslor was found guilty of armed statutory burglary, use of a firearm in the commission of a felony, and malicious wounding after a bench trial in the Circuit

Court for the City of Virginia Beach ("the trial court"). The Court of Appeals of Virginia

summarized the evidence presented as follows:

> So viewed, the evidence proved that on August 29, 2007, Michael Steffey woke
> up at approximately 9:30 p.m. and prepared to take his dog outside. When he
> went downstairs he discovered a man inside the house. The man ordered Steffey
> not to move. Steffey observed the man from a short distance away and identified
> him as [Canslor]. Steffey observed [Canslor] reach towards his pocket. Steffey
> took a step forward and bent down as [Canslor] fired a gun, striking Steffey in the
> head. Steffey fled and called the police. The police discovered [Canslor's]
> fingerprint on the rear door of Steffey's residence. Steffey's wife had cleaned the
> door approximately five days earlier.
> . . .
> Steffey testified that on the night of the shooting, there were lights on in the
> kitchen and in the dining room and that he observed [Canslor] from
> approximately ten feet away and for about thirty seconds before being shot.
> Steffey identified [Canslor] with a high degree of certainty at a preliminary
> hearing approximately three months later. Steffey also positively identified
> [Canslor] at trial. The record supports the court's conclusion that Steffey's
> identification of [Canslor] was reliable.
> . . .
> [Canslor's] fingerprint was recovered from the back door of Steffey's residence.
> Steffey's wife testified that approximately five days before the incident, she had
> thoroughly cleaned the door. [Canslor] provided no support for his contention
> that he could have left a fingerprint on the door weeks before the incident because
> he may have been at the house recruiting for the military.

*Canslor v. Commonwealth*, No. 0282-09-1 (Va. Ct. App. Sept. 16, 2009) (unpublished per

curiam). On January 27, 2009, Canslor was sentenced to sixty years imprisonment with forty

years suspended, for a twenty year term of active incarceration. Canslor's direct appeal to the

Court of Appeals of Virginia was denied on September 16, 2009. The Supreme Court of

Virginia refused Canslor's petition for appeal on July 13, 2010. Canslor did not petition the

United States Supreme Court for a writ of certiorari, and therefore his conviction became final

ninety days later on October 11, 2010.

Exactly one year after the Supreme Court of Virginia refused Canslor's direct appeal,

Canslor filed a petition for a writ habeas corpus in the trial court on July 13, 2011. On May 1,

2

2012 the trial court denied and dismissed the petition. On December 13, 2012, the Supreme Court of Virginia refused Canslor's petition for appeal. Canslor filed the instant petition for a writ of habeas corpus on January 9, 2013.[1] Between June of 2013 and March of 2014, Canslor failed to comply with the procedural rules governing 28 U.S.C. § 2254 petitions in this Court. *See* ECF Nos. 7-17 (failing to submit two exact copies of his petition). Eventually, Canslor filed an amended petition, ECF No. 18, and the Court directed the Respondent to respond accordingly. In his amended petition now before the Court, Canslor raises the following seventeen claims:

A. Ineffective Assistance of Counsel (Speedy Trial Violation): "[T]he petitioner avers that his defense counsel's performance was deficient when she failed to protect his rights to a Speedy trial under Virginia Code § 19.2-243(4) and the United States Constitution by refusing to honor petitioner's wishes to have a speedy trial thus, resulting in the defendant being held in continuous confinement for almost ten months in the Virginia Beach City Jail." ECF No. 18 at 24.

B. Ineffective Assistance of Counsel (Jury Trial Violation/Duress): "[T]he petitioner avers that his defense counsel's performance was constitutionally deficient when she failed to protect petitioner's 6th Amendment Right to a jury trial after Petitioner insisted on taking one. Defense counsel refused to push for a jury trial on the grounds that [sic] her personal opinion; "Because it's a white man saying that a black man did it . . . the juries in Virginia Beach tend to be very racist and they're going to convict you just because," conflicted with the fulfillment of her duty. *Id.* at 26.

C. Ineffective Assistance of Counsel (Public Trial Violation): "[D]efense counsel's performance was constitutionally deficient when she failed to protect petitioner's 6th

---

[1] The petition was filed as of the date Canslor certified that he placed the petition in the prison mailing system. ECF No. 1 at 9; *Houston v. Lack*, 487 U.S. 266, 276 (1988) (articulating the prison mailbox rule).

Amendment Right to a Public Trial . . . . [S]he failed to move the court [to] hear petitioner's case in open court before the public during normal business hour[s]." *Id.* at 27.

D. Ineffective Assistance of Counsel/Due Process Violation (Denied a Fair Trial): "[D]efense counsel failed to present argument and challenge the fact that the "Fugitive from Justice" warrant issued for petitioner . . . was inaccurate and plainly fraudulent . . . . Although, petitioner was never actually charged nor indicted of the specific offense listed on the warrant (aggravated assault), he was, however, arrested and extradited as a direct response to the frivolous and incorrectly listed charge." *Id.* at 28.

E. Ineffective Assistance of Counsel (Outrageous Government Misconduct): "[D]efense counsel failed to present argument and challenge the court to declare the petitioner's trial a mistrial in preservation of the petitioner's 6th and 14[th] Amendment Rights after it was brought to the courts attention through petitioner's testimony during trial that a grave malpractice of justice (One-man Showup) had occurred on behalf of the Commonwealth, when the victim/witness was allowed to appear at a [bond]-hearing November 5, 2007." *Id.* at 29.

F. Ineffective Assistance of Counsel (Right to be present at Critical Stages of Trial): "[D]efense counsel . . . neglect[ed] her duty to insist and insure the petitioner be physically present in the courtroom on any [and] all dates that [a] court proceeding took place to agree or disagree with counsel's decision to continue any of his trial dates." *Id.* at 31.

G. Ineffective Assistance of Counsel ("Cronic" Standard Violations): "[C]ounsel failed to render a reasonable defense strategy and impeach two of the Commonwealth's witnesses

4

when DNA excluded petitioner as the culprit . . . and fingerprint evidence clearly contradicted their testimonies." *Id.* at 33.

H.  Ineffective Assistance of Counsel: "[C]ounsel erred in failing to demand evidence challenging the Commonwealth's expert/witness, Officer Michelle Day's, whose testimony is material, credibility as to the material of the mentioned photo album [sic], and as to whether or not latents could be procured from the material." *Id.* at 36.

I.  Ineffective Assistance of Counsel (Judicial Bias): "[C]ounsel failed to object and challenge Judge West when the judge failed to acknowledge and protect the petitioner's right to a Fair Trial after learning that his Due Process rights had bee[n] violated by the 'One Man Show-Up' that occurred November 5, 2007, prior to the petitioner's preliminary hearing. Judge also unlawfully and unreasonably shifted the burden of proof onto the defendant (petitioner) during trial." *Id.* at 37.

J.  Ineffective Assistance of Counsel (Discriminatory Charges): "[C]ounsel failed to object and challenge the legality of Commonwealth Attorney's charges of Malicious Wounding, Armed Burglary, and Use of a Firearm in the Commission of a Felony after Commonwealth failed to propose or prove the necessary element of intent during petitioner's trial." *Id.* at 39.

K.  Ineffective Assistance of Counsel (Prosecutorial Misconduct): "[C]ounsel failed to demand that the Commonwealth's Attorney render the petitioner a Speedy Trial as guaranteed by Code 19.2-243(4), Code of Virginia (1950) and the Sixth Amendment of the United States Constitution and deliberately obstructed justice by refusing to deliver up exculpatory evidence pertaining to guilt or innocence, the original police report(s) or a copy thereof, with the requested "Motion for Discovery" that was requested twice and

misled the defense with a Motion to present DNA evidence at trial [sic]." *Id.* at 42.

L. Ineffective Assistance of Counsel (Right to Confrontation): "[C]ounsel failed to subpoena the detective (S. Coerse), who was allowed to skip out on testimony and deprived the petitioner of the right to cross-examination." *Id.* at 44.

M. Ineffective Assistance of Counsel (Disproportionate Sentence): "[C]ounsel failed to argue that Commonwealth's Attorney recommend a sentence." *Id.* at 45.

N. Ineffective Assistance of Counsel (Conflict of Interest): "[C]ounsel was ineffective in failing to withdraw from the case upon her client's initial request, after client cited conflicts of interest as reasons." *Id.* at 46.

O. Ineffective Assistance of Counsel (Failure to Investigate): "[C]ounsel was ineffective in failing to promptly and thoroughly investigate the defendant's alibi, police report(s), 911 audio, and all other exculpatory evidence that was pertinent to trial and in no way, form, or fashion intended or attempted to obtain expert witnesses." *Id.* at 47.

P. Ineffective Assistance of Counsel (Suggestive Identification): "Counsel was absent for an in court One Man Show-Up several months after the alleged crime, in a closed courtroom . . . . No prior applicable description had been made by the victim/witness, nor was the petitioner ever interviewed by the investigating detective, Sean Coerse, or placed in a physical or photo line-up." *Id.* at 48.

Q. Ineffective Assistance of Counsel (Appellate Counsel): "[A]ppellate counsel was ineffective in failing to argue that the courts make the available exceptions to Rule 5A:18 to meet the ends of justice when considering the subject of the One Man Show-Up and it being a 14th amendment violation, raise the claim of ineffective assistance, or devise and discuss a reasonable defense strategy, and inform petitioner of his failure to properly

comply with the rules and guidelines of the Supreme Court of Virginia that ultimately resulted in the refusal and unsuccessfulness of petitioner's direct appeal." *Id.* at 48-49.

On May 12, 2014, the Attorney General of Virginia, on behalf of the Respondent, filed a Rule 5 Answer, a motion to dismiss, a *Roseboro* notice, a notice for submission of state court records, and a brief in support of the motion to dismiss and Rule 5 Answer. ECF Nos. 21-25. Canslor filed a responsive brief to the motion to dismiss, ECF No. 28, and also filed two motions to strike evidence, ECF Nos. 29, 30, and one motion to affirm, ECF No. 31.[2] The Respondent has not filed a reply brief. Thus, the motion to dismiss is ripe for a recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Statute of Limitations

Canslor filed his habeas petition with this Court before the applicable statute of limitations deadline passed, and therefore it is timely. Under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), section 2254 petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). However, in calculating the limitations period, the Court excludes, or tolls, the time during "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2).

Canslor's conviction became final on October 11, 2010, or ninety days after the Supreme Court of Virginia's order refusing his direct appeal, when the time to appeal that order to the United States Supreme Court expired. *See* U.S. Sup. Ct. R. 13.1; *Harris v. Hutchinson*, 209 F.3d 325, 328 & n.1 (4th Cir. 2000) ("[T]he time for seeking direct review of [the] state-court

---

[2] Subsequently, on June 16, 2014, Canslor also filed a motion for default, ECF No. 32, a motion for summary judgment, ECF No. 33, and a motion to object, ECF No. 34, with a memorandum in support, ECF No. 35.

conviction was concluded . . . when the period for filing a petition for a writ of certiorari in the United States Supreme Court expired."). As a general matter, under 28 U.S.C. § 2244(d)(1), Canslor had until October 11, 2011 to file his habeas petition in this Court. However, this time period was statutorily tolled from July 13, 2011, when Canslor filed his state habeas petition in the trial court, to December 13, 2012, when the Supreme Court of Virginia dismissed and refused his appeal. *Cf. Lawrence v. Florida*, 127 S. Ct. 1079, 1084-85 (2007) (holding the petitioner is not entitled to tolling for the additional ninety days to file a petition for writ of certiorari to the United States Supreme Court following state collateral review, even if the petition for certiorari is actually filed). By July 13, 2011, when Canslor filed his state habeas petition, two-hundred and seventy-five days had already run—from October 11, 2010—on the one-year statute of limitations to file a federal habeas. By filing his original federal habeas petition in this Court on January 9, 2013, only twenty-eight days after his state habeas petition had been dismissed, Canslor was well within the one-year statute of limitations deadline as prescribed by AEDPA, which had been tolled until March 13, 2013. Therefore, the petition is timely.

## B. Exhaustion

The Respondent concedes that Canslor exhausted all of his habeas claims in the instant federal petition by presenting them to the proper state courts, except for claim P, which the Respondent argues is unexhausted because it was never raised in the state habeas petition. *See* ECF No. 25 at 3 ("Canslor presents this Court with a petition that sets forth its claims in an "Amended Memorandum of Law and Facts in Support of Writ of Habeas Corpus Ad Subjiciendum." That memorandum is identical to the memorandum setting forth claims that was rejected by the Circuit Court of the City of Virginia Beach . . . [and ultimately refused by the Supreme Court of Virginia]."); *but see* ECF No. 25 at 19 ("Petitioner alleges in claim P counsel

was absent when he was subjected to a suggestive identification when the victim identified him in a preliminary hearing. This claim was never presented to the state court and is unexhausted. Moreover, although he alleges counsel was not present, the transcript of January 17, 2008 reflect[s] that counsel was present and petitioner's claim is false."); *see also Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b) ("In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief."); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997) ("To exhaust state remedies, a habeas petition must fairly present the substance of his claim to the state's highest court.")).

In liberally construing the *pro se* prisoner's pleadings, as the Court is required to do, *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), and after reviewing the state court habeas order, the Court agrees that all of Canslor's claims in the instant federal habeas petition, except for claim P, have been exhausted because they were previously presented to the highest court in Virginia, after the trial court denied and dismissed the state petition and the Supreme Court of Virginia refused review. Consequently, the undersigned **RECOMMENDS** that Respondent's motion to dismiss Claim P be **GRANTED** based on failure to exhaust, and the merits of Claim P therefore will not be considered by this Court. Accordingly, the Court will address the merits of Canslor's remaining claims now before the Court.

## C. Standard of Review

The trial court dismissed Canslor's initial state habeas in a thirty-two page order, and the Supreme Court of Virginia summarily refused Canslor's appeal of that dismissal stating, "the Court is of the opinion there is no reversible error in the judgment complained of." This

constitutes an "adjudication on the merits," and the parties do not appear to otherwise contest this characterization. *See Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) ("[Courts] must uphold the state court's summary decision unless [their] independent review of the record and pertinent federal law persuades [them] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (citations omitted); *see also Renoir v. Virginia*, No. 7:99-cv-580, 2001 WL 34801301, at *8 n.7 (W.D. Va. July 31, 2001) (holding Virginia Supreme Court adjudicated claim on the merits where it found "no reversible error in the judgment complained of.").

The Court reviews Canslor's 2254 habeas petition under the daunting standard set out in AEDPA. The significant burden on 2254 petitioners cannot be understated. "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). When a state court addresses the merits of a claim that is raised in a 28 U.S.C. § 2254 petition, the Court may not grant federal habeas relief on claims of legal error by the state court unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e U.S. Supreme] Court has on a set of

materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

Federal habeas relief is precluded, "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedent. It goes no farther.") (citation omitted). In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Here, as in *Premo*, because there is no allegation that the state courts decided Canslor's state habeas "differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law." *Premo, supra*, at 739; 28 U.S.C. § 2254(d)(1).

Generally, to have been entitled to habeas relief in state court for ineffective assistance of counsel claims under the Sixth Amendment, Canslor had to show both that his defense counsel provided deficient assistance and that he was prejudiced as a result. *Strickland v. Washington*, 446 U.S. 668, 700 (1984). First, to establish deficient performance, Canslor was required to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Canslor was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that the petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding.").

In the context of Sixth Amendment ineffective assistance of counsel claims that have already been rejected by the state court, the United States Supreme Court has summarized the high bar petitioners then face in a federal 2254 habeas petition:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [466 U.S. 668, 689 (1984)]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles [v. Mirzayance]*, 556 U.S. [---, ---], 129 S. Ct. [1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at --- , 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo*, 131 S. Ct. at 740. With that standard in mind, the Court now turns to the merits of Canslor's seventeen claims ineffective assistance of counsel.[3]

### D. Analysis of Claims

<u>Claim A</u>

In claim A, Canslor argues that his attorney was deficient when she failed to assert his right to a speedy trial, because his trial occurred outside the time period required under the Virginia Code after his attorney agreed to multiple continuances. ECF No. 18 at 24-25. In dismissing this claim, the trial court found that counsel advised Canslor of all continuance requests, that Canslor agreed with those continuance requests, and that Canslor cannot obtain habeas relief for continuance requests with which he agreed. In the alternative, the trial court found that even if Canslor's attorney requested continuances without his permission, such action would not constitute deficient performance, because tactical matters, such as whether to seek a continuance, are left in the sound discretion of trial counsel. The trial court also found that Canslor failed to articulate any prejudice with the requisite specificity.

The trial court's dismissal of this claim was not an unreasonable application of *Strickland*, and therefore claim A in the petition now before the Court should be dismissed. First, the trial court's application of Strickland was not unreasonable because it was within trial counsel's tactical decision-making when she decided to agree to, or request, continuances of the trial date. Second, when looking at alleged speedy trial violations, the Court turns to factors announced in *Barker v. Wingo*: the length of delay, the reason for the delay, the defendant's assertion of his right, and any prejudice to the defendant. 407 U.S. 514, 530 (1972). Here, the

---

[3] Throughout the amended petition, Canslor refers to other alleged constitutional violations, but always in the context of ineffective assistance of counsel. *See, e.g.*, ECF No. 18 at 28 ("Under Claim (D), the Petitioner contends that his Fourteenth Amendment right to Due Process was violated under the first prong of Strickland test when his defense counsel failed to present argument and challenge the fact that the "Fugitive from Justice" warrant . . . ."). Accordingly, the Court analyzes Canslor's claims under the deferential standard discussed above.

length of the delay was not significant, and the reason was so that defense counsel could have a defense expert analyze the fingerprint found on the back door that belonged to Canslor. When entering his plea of not guilty before trial, Canslor did not assert his right to a speedy trial, nor did he object to the delay in commencing trial. Regardless, in the alternative, Canslor has wholly failed to articulate how any alleged deficient performance in relation to speedy trial deadlines was prejudicial. Accordingly, claim A should be dismissed.

Claim B

In claim B, Canslor argues that his attorney failed to assert his right to trial by jury, and that he agreed to waive that right under duress. ECF No. 18 at 26. The trial court dismissed this claim because Canslor failed to offer a valid reason why he should now be able to contradict claims made during the entry of his not guilty plea, when he stated that he understood he had a right to trial by jury, but that he wished to be tried by a judge without a jury. The trial court noted that Canslor even signed a waiver form that explicitly waived this right. Moreover, regarding Canslor's claim of duress, the trial court found that Canslor's attorney never told him that Virginia Beach juries are racist, but that instead, Canslor's attorney discussed the evidence, including Canslor's unexplained fingerprint at the scene, the victim's identification, and the lack of an alibi witness. The trial court also found that Canslor's attorney discussed the mandatory minimum sentences that a jury would have to impose, versus sentencing guidelines that a judge could consider, and that Canslor was not under any form of duress, as evidenced by the waiver form Canslor signed.

The trial court's dismissal of this claim was also not an unreasonable application of *Strickland*, and therefore claim B should be dismissed as well. The trial court's findings discussed above were not unreasonable given the trial court's pre-trial colloquy with Canslor,

and the waiver of a jury form that Canslor signed. There is nothing before the Court to suggest that this was an unreasonable application of *Strickland*, and therefore, claim B in this petition should be dismissed.

### Claim C

In claim C, Canslor argues that his attorney was ineffective because she failed to protect his right to a public trial, claiming that the attorney failed to ask the court to hold the trial in open court before the public during normal business hours. ECF No. 18 at 27. The trial court found this claim to be without merit. Specifically, the trial court noted that the trial transcript reflected that "after hearing the testimony of the Commonwealth's four witnesses, the petitioner's testimony, the argument of counsel and the trial court's findings, the proceedings concluded at 5:04 p.m. Further, nothing in the record indicates that the proceedings were not open to the public." The trial court concluded that Canslor failed to prove either prong of *Strickland* under this claim. The trial court's dismissal of this claim was also not an unreasonable application of *Strickland*, and therefore claim B should be dismissed as well. There is absolutely no indication in the record, or any evidence presented by Canslor, that his trial was not open to the public and not conducted during normal business hours. Accordingly, the trial court's dismissal of this claim was entirely reasonable under *Strickland*, and this Court should dismiss claim C as well.

### Claim D

In claim D, Canslor asserts his attorney was ineffective for failing to present argument and challenge the fugitive from justice warrant that was issued for Canslor, which was allegedly inaccurate and plainly fraudulent. ECF No. 18 at 28-29. The trial court found that this claim was refuted by the statements that Canslor made during his plea colloquy, and that it is without merit. First, during the plea colloquy, Canslor stated that he was entirely satisfied with the

services of his attorney. Second, once he was extradited to Virginia, Canslor was served with the relevant warrants and any challenge to the fugitive from justice warrant was therefore moot. Accordingly, the trial court dismissed this claim as failing to satisfy either prong of *Strickland*. This was not an unreasonable application of *Strickland*. Again, Canslor cites no basis for which his attorney should have "challenged" the fugitive from justice warrant, and the trial court's finding that the attorney's performance was not deficient was not an unreasonable application of *Strickland*. In the alternative, the trial court's finding that there was no prejudice to Canslor is also not unreasonable, given that once Canslor was in Virginia, he was served with the additional warrants, for which he eventually went to trial and was convicted. Therefore, because the trial court's application of *Strickland* was not unreasonable, claim D should also be dismissed.

Claim E

In claim E, Canslor claims government misconduct, because the victim was allowed to identify him during a bond hearing when Canslor was wearing an orange inmate jumpsuit, and that his attorney was ineffective for failing to move the Court to declare a mistrial after Canslor's testimony at trial revealed a "one-man show up" had occurred during his bond hearing. ECF No. 18 at 29-31. The trial court dismissed this claim, finding that his attorney is not deficient for failing to file frivolous motions, and that regardless, there was no prejudice, because the victim was still able to identify Canslor on two subsequent occasions: at the preliminary hearing and the trial itself. The state court did not unreasonably apply *Strickland* to this claim. Specifically, the state court's application was not unreasonable when it determined that this claim did not constitute deficient performance by Canslor's attorney, and that there was no prejudice. Accordingly, claim E should also be dismissed.

16

<u>Claim F</u>

In claim F, Canslor claims his attorney was ineffective because she failed to protect his right to be present during critical stages of his trial, because Canslor was not present when his trial date was continued on numerous occasions. ECF No. 18 at 31-32. Similar to claim A, the trial court dismissed this claim because it was refuted by statements Canslor made when he entered his plea of not guilty, mainly that he was satisfied with the services of his attorney, and that continuance requests are within the sound discretion of trial counsel's tactical decision making and strategy. Moreover, Canslor failed to articulate any prejudice. The state court's dismissal was not an unreasonable application of *Strickland*. The trial court found that Canslor's attorney informed him of all continuances, and that Canslor agreed to all continuances; thus, any appearance by Canslor was not necessary. Additionally, the state court record reflects that most continuances were requested because Canslor's attorney needed more time to get the results from her fingerprint analyst, or that she needed more time to investigate Canslor's alleged alibi – both of which are strategic, tactical decisions. Thus, the state court's ruling was not an unreasonable application of *Strickland*, and claim F should be dismissed as well.

<u>Claim G</u>

In claim G, Canslor argues that his attorney was ineffective because she failed to impeach the police officer, Michelle Day, who testified about where Canslor's fingerprint was found, and that she failed to impeach the victim's testimony using the 911 call and initial police reports after Canslor's DNA was not found on the bandana located outside the back door. ECF No. 18 at 33-36. The trial court dismissed this claim because cross-examination of witnesses and trial tactics are not subject to second guessing in a petition for a writ of habeas corpus. *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978). This was not an unreasonable application of

federal law. Canslor attempts to conflate effective assistance with successful assistance, but this is not the law under *Strickland*. Accordingly, claim G is without merit and should be dismissed.

Claim H

In claim H, Canslor argues that his trial attorney was ineffective because she did not demand evidence that challenged Officer Day's testimony that fingerprints could not be obtained from the material of a photo album, which is what the alleged perpetrator was allegedly holding when the victim first saw him in his home. ECF No. 18 at 36-37. The trial court dismissed this claim on the same basis as claim G. This dismissal is not an unreasonable application of *Strickland*. Moreover, it was not unreasonable for the state court to note that Canslor failed to proffer exactly what evidence "counsel failed to demand" to challenge Officer Day's testimony. Without such proffer, Canslor fails to show that his attorney's performance was deficient, and he fails to show that he was prejudiced as a result. Accordingly, claim H should be dismissed as well.

Claim I

In claim I, Canslor argues his attorney was ineffective for failing to challenge the alleged bias of the trial judge. ECF No. 18 at 37-39. Specifically, Canslor claims his attorney should have "challenged the bias" of the trial judge after the judge failed to acknowledge and protect Canslor's right to fair trial after she learned about the one man show-up, and when she allegedly shifted the burden of proof to Canslor during the trial. The trial court dismissed the claim because his attorney was not required to file frivolous motions, as discussed above. Moreover, with regard to the claim that the trial judge shifted the burden of proof onto Canslor, the trial court addressed this claim with more specificity:

> In support of his allegation, petitioner states in his attached affidavit, paragraph 23, that Judge West shifted the burden of proof when she asked petitioner for

18

proof that he was in Tennessee on the day of the offense as he testified to at trial. The burden of proof never shifted. Petitioner presented an alibi defense. Petitioner alleged he was in Tennessee on the date of the offense, and that his fingerprint was on the victim's door from when he was recruiting for the Army on a prior occasion. The Court inquired as to whether the petitioner had any evidence, such as a charge receipt, to show he was in Tennessee as that 'would be the simple way to clear [his] name.' Petitioner indicated that he did not have any documentary evidence establishing his presence in Tennessee on the date of the offense. The fact that the Court pointed out that proof of petitioner's whereabouts would be helpful to petitioner's alibi defense did not shift the burden of proof. Thus, the Court finds, there was nothing for counsel to object to.

This finding and application of *Strickland* was not unreasonable. Again, not only did Canslor fail to set forth a claim as to how his attorney's performance was deficient, he also failed to set forth any articulable prejudice. As such, claim I also fails to overcome the high burden because the state court's determination was not unreasonable, and thus this claim should be dismissed as well.

### Claim J

In claim J, Canslor argues this attorney was ineffective for failing to challenge the legality of the Commonwealth's charges because the charges he faced at trial were different from those charges on the original fugitive warrant. ECF No. 18 at 39-42. The trial court dismissed this claim for the same reason it dismissed claim D: the claim was rendered moot when Canslor did not challenge extradition and when he was later served with the warrants charging him with the charges he faced at trial and for which he was convicted. There was no basis for his attorney to object, or to challenge the "legality of the charges." His attorney had no obligation to file a frivolous motion, or argue a frivolous objection. Therefore, the trial court's dismissal of this claim was not unreasonable under *Strickland*, and claim J should also be dismissed.

## Claim K

In claim K, Canslor argues his attorney was ineffective because she failed to preserve his right to a speedy trial, his right to be present, and his right to receive exculpatory evidence. ECF No. 18 at 42-44. Canslor raised this in his state habeas petition as claims L and N. This claim is largely cumulative of claims already addressed above. The state court dismissed this claim because "petitioner was tried approximately seven months after his preliminary hearing. The Court finds delays were caused when counsel and her investigator wasted time trying to gather evidence for petitioner's alibi defense, which he later admitted to this Court was a lie. In addition, time was needed to conduct an independent fingerprint test to prove the print at the scene did not belong to the petitioner." Regardless, the state court found this claim was also without merit because, like before, Canslor's attorney properly controls the case and strategic decisions. This claim essentially is duplicative of claims A, B, and C. No part of the state court's judgment was an unreasonable application of *Strickland*, and therefore, claim K should also be dismissed.

## Claim L

In claim L, Canslor argues his attorney was ineffective because she failed to preserve his right of confrontation when Detective Coerse was not called to testify. ECF No. 18 at 44-45. Canslor brought this as claim M in his state habeas petition. The state court found that Canslor failed to proffer exactly what the testimony of Detective Coerse would have been, and thus failed to meet his burden under *Strickland*. Moreover, as the Respondent notes in the memorandum in support of his motion to dismiss, "it is obvious that if Coerse was a desired defense witness, the confrontation clause was not implicated, and counsel could not compel the Commonwealth to put on any particular witness to prove its case." ECF No. 25 at 17 n.3. The state court's

dismissal of this claim was not an unreasonable application of *Strickland*. Therefore, claim L should be dismissed as well.

## Claim M

In claim M, Canslor argues that his attorney was ineffective because she did not argue that his sentence was disproportionate. Canslor claims the prosecutor should have recommended a lesser sentence. ECF No. 18 at 45. This was presented to the state court as claim O in Canslor's state habeas petition. The trial court rejected this claim and dismissed it because Canslor "cited no authority for the proposition that a Commonwealth's Attorney is required to recommend a specific sentence." The trial court also found that Canslor failed to show a reasonable probability that any argument by his attorney would have resulted in a different outcome or a different sentence. This was not an unreasonable application of *Strickland*, and therefore, claim M should also be dismissed.

## Claim N

In claim N, Canslor argues that his attorney was ineffective because there was a conflict of interest when she did not withdraw from representation. Canslor claims, like he did in state court in claim Q, that he made a request for his attorney to withdraw after his attorney filed a motion to quash, and after his attorney allegedly stated that Virginia Beach juries were racist and if Canslor chose a jury trial he would be convicted. The trial court found this claim failed on the merits for reasons similar to why claim B failed on the merits. The trial court found any conflict of interest claim was a conclusory allegation, and Canslor failed to advance any articulate conflict that would have required that his attorney withdraw from representation. The trial court cited *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) in holding that Canslor must demonstrate "a conflict of interest actually affected the adequacy of his representation." The trial court

concluded that Canslor failed to show an actual conflict of interest because he did not explain what the conflict was, or how counsel violated the Rules of Professional Conduct. This was not an unreasonable application of federal law. Canslor again fails to articulate what the conflict of interest was, and how it prejudiced his defense or the adequacy of his representation. Accordingly, claim N should be dismissed as well.

Claim O

In claim O, Canslor argues that his attorney was ineffective because she did not investigate his alibi, the 911 call and police reports, did not obtain expert witnesses, and did not obtain video evidence from Hickory Ridge Mall in Tennessee on the date of the crime. ECF No. 18 at 47. Canslor brought this as claim R in his state petition, and the state court rejected it because it was without merit. The state court found that, contrary to his claims, Canslor's attorney thoroughly investigated Canslor's alleged alibi, and that an investigator with his attorney's office followed up on all leads that Canslor provided for his Tennessee alibi. However, the investigation was unable to verify Canslor's alibi, because Canslor's alibi was completely false. The trial court learned in post-trial hearings that Canslor had provided his attorney with a false alibi and in fact was not in Tennessee during the crime. Instead, he later admitted to being at the crime scene the night of the offense and lied about being in Tennessee, according to letters he wrote to the trial judge and the victim which are part of the state court record. *See* Va. Beach. Cir. Ct. R. at 108-109 (Canslor's letter to Judge West), at 114-116 (Canslor's letter to the victim). Canslor's argument now that counsel was ineffective for failing to investigate his false alibi, and his contention that such investigation would have uncovered exculpatory evidence, is simply dishonest. Therefore, the state court found that Canslor failed to

22

satisfy both prongs of *Strickland* for this claim. This is not an unreasonable application of *Strickland*. This claim is wholly without merit, and should be dismissed.

Claim Q

Lastly, in claim Q, Canslor claims his appellate attorney was ineffective for not arguing on appeal that the appellate courts should invoke the "ends-of-justice exception" to consider Canslor's claim regarding the improper identification during the bond hearing or preliminary hearing and his claims of ineffective assistance of counsel. ECF No. 18 at 48-49. The Virginia Court of Appeals found the victim's identification reliable and Canslor's attorney reasonably challenged the sufficiency of the evidence. The trial court found this claim, brought as claim S in the state habeas petition, to also be without merit, finding that appellate counsel's choice of which issues to raise on appeal is "virtually unassailable." *Jones v. Barnes*, 463 U.S. 745 (1983). This was not an unreasonable application of *Strickland*, and therefore, claim Q should also be dismissed.

In conclusion, the state court did not unreasonable apply *Strickland* to Canslor's claims. All of Canslor's claims before the Court are meritless and should be dismissed. The Court notes the context in which the state court viewed Canslor's claims, in light of Canlsor's post-trial and pre-sentencing correspondence with the trial court judge and the victim. In personal letters written to both the trial judge and the victim, which are included in the state court record, *see* Va. Beach Cir. Ct. R. at 108-109, 114-116, Canslor admits to being at the victim's house on the night of the crime, he admits to lying when he testified under oath during trial that he was in Tennessee the night of the offense, and although he denied personally shooting the victim and claims another person was present in the house and fired the gun, Canslor admitted his previous statements and alibi defense had been a complete fabrication. It was this alibi defense that

Canslor's attorney diligently worked to prove: she (unknowingly) attempted to prove a false affidavit, and she hired an independent fingerprint expert, who only confirmed that the fingerprint found at the crime scene belonged to Canslor. Accordingly, because there is more than a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," *Premo*, 131 S. Ct. at 740, it was not unreasonable for the state court to dismiss Canslor's habeas claims in their entirety, and this Court should dismiss this petition as well.

### E. Pending Motions

Lastly, Canslor has filed a litany of frivolous motions that are also without merit and not well-taken. On June 4, 2014, Canslor filed two motions to strike evidence and one motion to affirm. ECF Nos. 29, 30, 31. In the motions to strike evidence, Canslor asks the "Court to grant this petitioner's motion to strike evidence pertaining to Respondent's evidence of; Petitioner's verbal and written statements during and pertaining to plea colloquy due to them being a collateral issue, in accordance with Rule 21 of the Supreme Court Rules." ECF Nos. 29, 30. Canslor cites no basis for his requested relief. The motions to strike, ECF Nos. 29, 30, are **DENIED.** Canslor also filed a motion to affirm, wherein he asks the Court to "affirm the Petition for Writ of Habeas Corpus pursuant to Rule 20.4 and Rule 21.1 and 21.4 of the Supreme Court for the reasons state more elaborately in a response to Respondent's motion to dismiss." ECF No. 31. The Court interprets the motion to affirm, ECF No. 31, as a redundant appeal to the Court to grant the habeas petition, and accordingly, **RECOMMENDS** that it also be **DENIED.**

On June 16, 2014, Canslor filed three more motions: a motion for default, a motion for summary judgment, and a motion to object, ECF Nos. 32, 33, 34. All three motions are based on Respondent's submission of his brief in support of his Motion to Dismiss minutes late. Each motion is again, without merit, and fails to cite a proper basis under which this Court could grant

any relief. Accordingly, Canslor's motion to object, ECF No. 34, is **DENIED.** The undersigned **RECOMMENDS** that the motion for default, ECF No. 32, and the motion for summary judgment, ECF No. 33, be **DENIED.**

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondent's motion to Dismiss, ECF No. 22, be **GRANTED** and Canslor's amended petition, ECF No. 18, be **DENIED** and **DISMISSED WITH PREJUDICE.** The undersigned **RECOMMENDS** Canslor's pending motions, ECF Nos. 31, 32, and 33, be **DENIED.** Canslor's pending motions, ECF Nos. 29, 30, and 34 are **DENIED.**

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the

Petitioner and counsel of record for the Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 1, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Jarvis L. Canslor, #1399348
Augusta Correctional Center
1821 Estaline Valley Road
Craigsville, Virginia 24430
*Pro Se* Petitioner

Mr. Steven A. Witmer
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for the Respondent

Fernando Galindo,
Clerk of Court

By: _____

Deputy Clerk
July ___, 2014

27